EDWARD P. DAVIS JR. (Bar No. 56847)
DAVID S. BLOCH (Bar No. 184530)
LUDMILA O. YAMALOVA (Bar No. 221502)
**GRAY CARY WARE & FREIDENRICH LLP**
2000 University Avenue
East Palo Alto, CA  94303-2248
Tel: 650-833-2000
Fax: 650-833-2001

Attorneys for Plaintiff
Dioptics Medical Products, Inc.

FILED
JUN 26 2003
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIOPTICS MEDICAL PRODUCTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CAPO, INC., a Florida corporation,<br><br>Defendant. | **COMPLAINT FOR TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED**<br><br>C03 02972 RS |

Plaintiff Dioptics Medical Products, Inc. ("Dioptics") alleges as follows:

## JURISDICTION

1. This is an action arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the laws (including the common law) of the State of California. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 (a), 1338, and 1367.

## VENUE

2. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b) and (c).

## INTRA-DISTRICT ASSIGNMENT

3. Venue is proper in the San Jose Division pursuant to Civil Local Rules 3-2 (c) and 3-2 (e) in that a substantial part of the events or omissions that give rise to a claim occurred in the counties encompassed by the San Jose Division.

///

-1-

## PARTIES

4. Plaintiff Dioptics is a corporation organized under the laws of the State of California and with a principal place of business at 51 Zaca Lane, Suite 150, in San Luis Obispo, California. Dioptics has been engaged in the business of manufacturing and selling sunglasses and protective eyewear since 1979. Dioptics maintains a leading presence in the medical, mass market, sporting goods and professional eyecare marketplaces with a stable of proprietary sunglass and eyeshield brands. Dioptics's commitment to continually develop and improve its trademark combination of fit, fashion, and performance eyecare products, has helped expand its distribution network worldwide, including in this judicial district.

5. Dioptics alleges on information and belief that Defendant Capo, Inc. ("Capo") is a corporation organized under the laws of the State of Florida and with a principal place of business at 2 Sunshine Blvd, Ormond Beach, Florida. Capo has been engaged in the business of wholesaling sunglasses since 1974.

## DIOPTICS'S TRADEMARKS AND TRADE DRESS

6. Dioptics's brands include SolarShield® (U.S. Trademark Registration No. 1,321,979), SolarShield Fits Over Glasses® (U.S. Trademark Registration No. 2,383,360), Solarettes® (U.S. Trademark Registration No. 1,555,631), SolarComfort® (U.S. Trademark Registration No. 2,442,367), OveRx® (U.S. Trademark Registration No. 2,688,860), and Fits Over™.

7. In addition to these trademarks, Dioptics has developed a combination of elements that, taken together, comprise an inherently distinctive trade dress (the "Dioptics Trade Dress"). The Dioptics Trade Dress is instantly recognizable to consumers because of distinctive and fanciful appearance of Dioptics's hang tags and store display graphics.

8. Specifically, the SolarShield Fits Over Glasses® line uses a distinctive color scheme, with white and yellow lettering against a blue background accented with a pink stripe. Dioptics has used this color scheme since at least 1996 in commerce in conjunction with its registered marks to market "wear-over" sunglasses, which are designed to be comfortably worn over prescription glasses.

9. Dioptics's hang tags, attached to the glasses and designed to identify their origins, are distinguished by a number of distinct elements, which include but are not limited to: (1) the design, under which Dioptics's SolarShield® trademark is prominently displayed in the center of the tag with the word "Solar" appearing above the word "Shield," with a stripe running across the tag below the SolarShield® mark; (2) the color scheme, in which large yellow and white letters spelling out SolarShield®, and a pink stripe across the bottom of the mark (often bearing the trademark Fits Over™) are contrasted against the tag's blue background; and (3) the rectangular and oval shapes and sizes of the tags.

10. Similarly, Dioptics's display headers and signs, used in stores to display Dioptics's glasses, are distinguished by their: (1) design, under which Dioptics's SolarShield® trademark is prominently displayed in the center of the tag with the word "Solar" appearing above the word "Shield," with a stripe running across the tag below the SolarShield® mark; and (2) color scheme, in which large yellow and white letters spelling out SolarShield®, and a pink stripe across the bottom of the mark (often bearing the trademark Fits Over™) are contrasted against the display's blue background.

11. The elements that comprise the Dioptics Trade Dress constitute a distinctive and protectable trade dress.

12. Certain design elements of the Dioptics Trade Dress are also protected by U.S. Trademark Registration No. 2,383,360. These elements include a configuration of words in which Dioptics's SolarShield Fits Over Glasses® trademark is displayed in the center of a tag with the word "Solar" appearing above the word "Shield" and the words "Fits Over Glasses" beneath them in a colored strip.

13. Dioptics has built substantial goodwill in the SolarShield®, SolarShield Fits Over Glasses®, and Fits Over™ marks and the Dioptics Trade Dress, such that the public has come to associate the Dioptics Trade Dress and trademarks with Dioptics as a source of quality wear-over sunglasses. SolarShield® products are the number-one doctor-recommended sunglasses in the world. Over 36 million SolarShield® glasses have been sold to date bearing the Dioptics Trade Dress and trademarks.

## PREDICATE FACTS COMMON TO ALL COUNTS

14. At the end of 1998, Dioptics entered into a non-exclusive distributorship agreement with Capo, pursuant to which Capo distributed Dioptics's sunglasses to retail stores nationwide, including in this judicial district.

15. Under the terms of this distributorship agreement, Dioptics compensated Capo for sending Capo's store service personnel to place SolarShield® products in store displays. Capo supplied these displays specifically to sell SolarShield Fits Over Glasses®. The display units featured Dioptics's trademarks and the Dioptics Trade Dress. Dioptics supplied Capo with specific instructions for assembling the displays and for properly stocking them with SolarShield® products.

16. Capo distributed Dioptics products pursuant to the terms of this arrangement for approximately 4 years. At some point after Dioptics agreed to allow Capo to act as a non-exclusive distributor of Dioptics products, however, and unbeknownst to Dioptics, Capo commenced the manufacture and sale of its own "SunCovers" wear-over sunglasses.

17. Capo's SunCovers sunglasses are substantially identical in overall appearance, design, and functionality, but inferior in style and performance, to the Dioptics SolarShield Fits Over Glasses®. In addition, the SunCovers name deliberately evokes Dioptics's SolarShield®, Fits Over™, and OVERx® trade names. Dioptics is informed and believes that Capo has applied for federal trademark registration of the SunCovers name.

18. The logos, hang tags, and in-store displays produced by Capo to market SunCovers misappropriate the image and overall impression created by the Dioptics Trade Dress and infringe Dioptics's trademarks.

19. In designing its logos and hang tags, Capo copied all of the individual elements of the Dioptics Trade Dress and trademarks, including but not limited to: (1) the design, in which the SunCovers name is prominently displayed in the center of the tag with the word "Sun" appearing above the word "Covers" and a stripe running across the tag and below the SunCovers logo; (2) the color scheme, in which large yellow letters spelling out "SunCovers" and a pink stripe across the bottom are contrasted against the tag's blue background; and (3) the rectangular and oval size

-4-

and shape of the hang tags.

20. Similarly, Capo's in-store display graphics are almost identical to Dioptics's store display. Among other things, Capo copied (1) the design, in which the SunCovers name is prominently displayed in the center of the sign with the word "Sun" appearing above the word "Covers" and a stripe running across the display and right below the product's name; and (2) the color scheme, in which the large yellow letters of the SunCovers name and a pink stripe at the bottom of the display are contrasted against a blue background.

21. Dioptics alleges on information and belief that, prior to and after the launch of the SunCovers product line, Capo replaced store display graphics bearing the Dioptics Trade Dress with nearly identical store display graphics bearing the Capo SunCovers logo. Thus, stores throughout the United States sold (and continue to sell) Dioptics SolarShield Fits Over Glasses® from display units bearing the nearly identical SunCovers name and logo. This has the effect of associating superior SolarShield® products with Capo's SunCovers product line.

22. Dioptics alleges on information and belief that, after the launch of the SunCovers product line, Capo deliberately placed SunCovers products with nearly identical hang tags in close proximity to SolarShield® Fits Over™ products in an effort to further confuse consumers with respect to the origin, sponsorship, and quality of the inferior SunCovers product line.

23. At all relevant times prior to the release of the SunCovers product line, Capo had actual knowledge of the existence and proprietary nature of the Dioptics Trade Dress. Capo's actions constitute a deliberate, intentional attempt to trade on Dioptics's goodwill by unlawfully copying the Dioptics Trade Dress and trademarks.

24. Dioptics has been injured by Capo's misappropriation of the Dioptics Trade Dress, in that the distinctiveness of the Dioptics trademarks and Trade Dress have been diluted and tarnished by the false association of the inferior Capo products with the Dioptics Trade Dress and trademarks. Dioptics has no adequate remedy at law. Its monetary damages, however, far exceed the $75,000 jurisdictional minimum.

/ / /

/ / /

GRAY CARY WARE
& FREIDENRICH LLP

EM\7143508.4
2100551-3

COMPLAINT FOR TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION

# FIRST CAUSE OF ACTION
# TRADE DRESS INFRINGEMENT
# (15 U.S.C. § 1125 (a))

25. Dioptics incorporates by reference paragraphs 1 through 24.

26. The Dioptics Trade Dress is inherently distinctive, fanciful, and entitled to trade dress protection.

27. The Dioptics Trade Dress has become recognizable throughout the United States as a designation of origin specifically identifying Dioptics as the source of the SolarShield® products it produces, and has acquired secondary meaning among customers.

28. Dioptics has invested significant money, time, and effort promoting the goodwill associated with its products, services, and the Dioptics Trade Dress. Dioptics has widely advertised its sunglasses using the Dioptics Trade Dress throughout the United States and in this judicial district.

29. Notwithstanding Dioptics's well-known and prior common-law and statutory rights in its trade dress, Capo, with actual and constructive knowledge of Dioptics's federal law trade dress rights, has adopted and used, without Dioptics's consent, the Dioptics Trade Dress in connection with the sale, offering for sale, distribution, and advertising of competing but inferior wear-over sunglasses. As a result of such use in interstate commerce and in this judicial district by Capo, consumers and the trade have been, and are likely to be, confused and misled, deceived and mistaken as to the source or sponsorship of Capo's unauthorized products in violation of the Lanham Act, 15 U.S.C. § 1125 (a).

30. Capo's infringing use of Dioptics's trade dress has and will continue to cause confusion in the minds of those in the trade, leading the trade to believe that Dioptics has approved, sponsored, or otherwise associated itself with Capo, which is false.

31. Capo's conduct was intended solely to exploit the goodwill and reputation associated with the Dioptics Trade Dress and to take advantage of such goodwill and reputation through a strategy of deliberate, willful infringement and piracy.

32. The award of money damages alone will not adequately compensate Dioptics in that Capo's acts are of a continuing nature and are likely to continue.

-6-

33. As a result of Capo's willful actions, Dioptics has suffered and will continue to suffer monetary damages in an amount to be proven at trial.

34. By its conduct, Capo has caused, and unless restrained and enjoined by the Court, will continue to cause irreparable harm, damage and injury to Dioptics warranting temporary, preliminary and permanent injunctive relief. Dioptics has no adequate remedy at law to otherwise repair this irreparable harm.

35. WHEREFORE, Dioptics prays for judgment as more fully set forth below.

## SECOND CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114 and at common law)

36. Dioptics incorporates by reference paragraphs 1 through 24 and 26 through 34.

37. Dioptics's arrangement of color elements in its hang tags and marketing materials constitute unregistered trademarks protected at common law.

38. Dioptics also owns registered trademarks. These trademarks include U.S. Trademark Registration No. 2,383,360 for the logo and design of SolarShield Fits Over Glasses®. The logo and design features the word SolarShield® displayed in the center of a field with the word "Solar" appearing above the word "Shield," and a stripe running across the tag below the SolarShield® name. These trademarks also include U.S. Trademark Registration No. 2,688,860 for OveRx®.

39. Dioptics has long been and now is extensively engaged in manufacturing, selling, and offering for sale in interstate commerce and throughout the United States sunglasses and other eyecare products under said trademarks. Through widespread and favorable public acceptance and recognition, these trademarks have come to be associated in the minds of the public and those in the eyewear industry with Dioptics, and have become both an asset of substantial value to Dioptics and a symbol of Dioptics, its quality products, and its goodwill.

40. Dioptics has spent significant time and money in establishing its trademarks in the minds of customers and the trade as a source of high quality eyewear.

41. Notwithstanding Dioptics's well-known and prior common-law and statutory rights in these trademarks, Capo, with actual and constructive knowledge of Dioptics's statutory

-7-

and common-law trademark rights, has adopted and used, without Dioptics's consent, Dioptics's trademarked color scheme and other trademarks in connection with the sale, offering for sale, distribution, and advertising of competing goods. As a result of such use in interstate commerce and in this judicial district by Capo, consumers and the trade have been, and are likely to be, confused and misled, deceived and mistaken as to the source or sponsorship of Capo's unauthorized products.

42. Capo also has adopted a brand, SunCovers, that is confusingly similar to Dioptics's trademarks, including but not limited to SolarShield® and OveRx®, and has sought registration before the United States Patent and Trademark Office for this brand name.

43. The Court is empowered to "determine the right to registration, order the cancellation of registrations, in whole or in part ... and otherwise rectify the register with respect to registrations." 15 U.S.C. § 1119. Further, federal courts have the inherent equitable power to grant such other relief against a trademark owner as the court deems is justified and appropriate.

44. Capo's infringing use of Dioptics's trademarks has and will continue to cause confusion in the minds of those in the trade, leading the trade to believe that Dioptics has approved, sponsored, or otherwise associated itself with defendants, which is false.

45. Capo's conduct was intended solely to exploit the goodwill and reputation associated with Dioptics's trademarks and to take advantage of such goodwill and reputation through a strategy of deliberate, willful infringement and piracy.

46. As a result of Capo's willful actions, Dioptics has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

47. The award of money damages alone will not adequately compensate Dioptics in that Capo's acts are of a continuing nature and are likely to continue.

48. By its conduct, Capo has caused, and unless restrained and enjoined by the Court, will continue to cause irreparable harm, damage and injury to Dioptics warranting temporary, preliminary, and permanent injunctive relief. Dioptics has no adequate remedy at law.

49. WHEREFORE, Dioptics prays for judgment as more fully set forth below.

///

GRAY CARY WARE & FREIDENRICH LLP   EM\7143508.4   2100551-3   COMPLAINT FOR TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION

## THIRD CAUSE OF ACTION
## UNFAIR COMPETITION
## (15 U.S.C. § 1125)

50. Dioptics incorporates by reference paragraphs 1 through 24, 26 through 34, and 37 through 48.

51. The conduct described above constitutes unfair competition, and unlawful and fraudulent business practices in violation of 15 U.S.C. § 1125. Capo is deliberately, intentionally, and unlawfully exploiting Dioptics's Trade Dress, trademarks, consumer goodwill, and other intellectual property for the benefit of Capo's own product.

52. Capo's use of the Dioptics Trade Dress and confusingly similar trademarks constitutes the use of words, terms, names or other symbols tending falsely to describe Capo and its product within the meaning of 15 U.S.C. § 1125 (a)(1). Capo's conduct is likely to cause confusion, mistake or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant and its product, to the detriment of Dioptics and in violation of 15 U.S.C. § 1125 (a)(1).

53. In addition, Capo's use of the Dioptics Trade Dress and confusingly similar trademarks constitutes a commercial use that causes and is likely to cause dilution of the distinctive quality of the Dioptics's trademarks and Trade Dress by lessening the capacity of those marks to identify Dioptics and distinguish the goods and services of Dioptics. Capo willfully intended to trade on Dioptics's reputation or to cause dilution of Dioptics's famous marks, names and trade dress. Capo's infringing uses began long after Dioptics's trademarks and Trade Dress had become famous.

54. These wrongful acts have proximately caused and will continue to cause Dioptics substantial injury, including but not limited to loss of customers, lost profits, dilution of its goodwill, and injury to its reputation. These actions will cause imminent irreparable harm and injury to Dioptics, the amount of which will be difficult to ascertain. Dioptics has no adequate remedy at law.

55. Dioptics is entitled to an injunction restraining Capo, its officers, agents, employees, and all persons acting in concert with it from engaging in further such unlawful

-9-

1 conduct.

2  56. Dioptics is entitled to recover from Capo the gains, profits, and advantages Capo has obtained as a result of the wrongful acts alleged above, in an amount to be proven at trial, including Capo's profits attributable to its unfair competition and infringement; the costs of future corrective advertising to reverse the injury caused by Capo; and is entitled to treble damages and attorneys' fees because of Capo's intentional and willful actions.

57. WHEREFORE, Dioptics prays for judgment as more fully set forth below.

### FOURTH CAUSE OF ACTION
### STATE UNFAIR COMPETITION
### (California Civil Code §17200 *et seq.*)

58. Dioptics incorporates by reference paragraphs 1 through 24, 26 through 34, 37 through 48, and 51 through 56.

59. Capo's conduct described and alleged in this Complaint constitutes unfair, unlawful, and fraudulent business practices in violation of California Business & Professions Code §§ 17200 *et seq*.

60. These wrongful acts have proximately caused and will continue to cause Dioptics substantial injury, including but not limited to loss of customers, lost profits, dilution of its goodwill, and injury to its reputation. If these actions continue, Dioptics will suffer imminent irreparable harm and injury, the amount of which will be difficult to ascertain. Dioptics has no adequate remedy at law.

61. Dioptics is entitled to monetary damages, compensatory damages, punitive damages, and an injunction restraining Capo, its officers, agents, employees, and all persons acting in concert with them from engaging in further such unlawful conduct.

62. WHEREFORE, Dioptics prays for judgment as more fully set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Dioptics prays for judgment against Defendant as follows:

63. That Capo be adjudged to have infringed the Dioptics Trade Dress under 15 U.S.C. § 1125 (a);

64. That Capo be adjudged to have infringed Dioptics's trademarks under 15 U.S.C. §

-10-

1114 and at common law;

65. That Capo be adjudged to have committed acts of unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, California Business and Professions Code § 17200, and California common law;

66. That Capo, its directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined temporarily, preliminarily and permanently, from direct or indirect infringement or use of either of Dioptics's trademarks or trade dress or any colorable imitation or confusingly similar variation of Dioptics's trademarks or trade dress;

67. That an Order issues barring all use of the SunCovers name and canceling its registration or, alternatively, directing non-registration of the application for registration, pursuant to 15 U.S.C. § 1119;

68. That Capo be ordered to account for and pay to Dioptics Capo's profits and all damages sustained by Dioptics due to Capo's trade dress and trademark infringement;

69. That Capo be ordered to account for and pay to Dioptics all damages caused to Dioptics for its acts of willful infringement and for its other violations of law, including any enhanced (trebled) damages under 35 U.S.C. § 284 and other applicable laws;

70. That Capo be ordered to account for and pay to Dioptics its total profit for its acts of willful infringement under 35 U.S.C. § 289;

71. That Capo be ordered to account for all gains, profits, and advantages derived from Capo's acts of infringement and other violations of law;

72. That Capo be held liable to Dioptics for all of Capo's profits in addition to any damages sustained by Dioptics and the costs of this action under 15 U.S.C. § 1117 (a), California Civil Code § 3344 (a), and other applicable laws;

73. That Dioptics be granted pre- and post-judgment interest on the damages caused to it by reason of Capo's acts of infringement and for its other violations of law, at the maximum legal rate;

74. That Dioptics be awarded its costs of suit and its reasonable attorneys' fees, costs,

-11-

1  and disbursements pursuant to 15 U.S.C. § 1125 (d), 35 U.S.C. § 285, California Civil Code §
2  3344 (a), and other applicable laws;

3      75. That Dioptics be awarded exemplary and punitive damages in an amount
4  determined by the Court to be reasonable; and

5      76. That the Court grant such other and further relief as the Court deems proper under
6  the circumstances.

Dated: June 26, 2003

Respectfully submitted,

GRAY CARY WARE & FREIDENRICH LLP

By_____
Edward P. Davis
David S. Bloch
Ludmila O. Yamalova
Attorneys for Plaintiff
Dioptics Medical Products, Inc.

## DEMAND FOR JURY TRIAL

Dioptics demands trial by jury for all causes of action herein pursuant to FED. R. CIV. P. 38 and CIVIL LOCAL RULE 3-6 (a).

Dated: June 26, 2003

GRAY CARY WARE & FREIDENRICH LLP

By_____
Edward P. Davis
David S. Bloch
Ludmila O. Yamalova
Attorneys for Plaintiff
Dioptics Medical Products, Inc.